IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| BRIAN T. LYNCH, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| CAPITAL ONE BANK (USA), N.A., et al., | : | No. 12-992 |
| | : | |
| Defendants. | : | |

**Goldberg, J.**                                                                    **June 14, 2013**

## MEMORANDUM OPINION

This case stems from allegedly fraudulent actions taken by Defendants, Capital One Bank (USA), N.A., Capital One Services, LLC (collectively, "Capital One") and Capital One's collection attorneys against Plaintiff Brian T. Lynch in a collection lawsuit within the Bucks County Court of Common Pleas. Capital One filed a motion to dismiss Plaintiff's second amended complaint on September 6, 2012. For the reasons that follow, we will grant Capital One's motion, and provide Plaintiff with leave to amend.

### I.  FACTUAL AND PROCEDURAL HISTORY[1]

Plaintiff opened a credit card account with Capital One on or about September 25, 2006. (2d Am. Compl. ¶ 46; Ex. A, ¶ 4.) On July 6, 2011, Capital One, through its attorneys Paul J. Klemm, Robert L. Baroska and Nudelman, Klemm & Golub, P.C., filed a complaint in Bucks County against Plaintiff, seeking payment on delinquent credit card bills. (Id. at Ex. C.) Capital One filed an amended complaint on January 20, 2012, attaching as an exhibit the Customer

---

[1] The following facts are derived from Plaintiff's second amended complaint and the exhibits attached thereto.

1

Agreement purported to govern Plaintiff's credit card account.  (Id. at ¶¶ 39-40, Ex. B.)  The Agreement attached to the amended complaint has a copyright date of 2010 and reads as an original agreement as opposed to an amendment or modification.[2]  (Id. at Ex. B, p. 6.)  Capital One's amended complaint sought to collect interest and reasonable attorney's fees "pursuant to the terms of the agreement."  (Id. at Ex. A, ¶ 15.)

Plaintiff initiated the federal court matter currently before us on February 24, 2012 and filed a second amended complaint on August 23, 2012.  The second amended complaint alleges that Capital One, along with all collection attorneys for Capital One Bank, has intentionally and fraudulently presented inapplicable Customer Agreements in collection actions as the operative agreement, and that such conduct constitutes: (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq. by all Defendants ("Count I"); (2) a violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a, et seq. by Capital One's collection attorneys[3]  ("Count II"); (3) a violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1, et seq. by all Defendants ("Count III"); and (4) a breach of contract by Capital One Services, LLC ("Count

---

[2] The first paragraph of the 2010 Agreement states, "Welcome to Capital One.  Thank you for opening a credit Card Account with us.  This Customer Agreement . . . contains the terms for your Capital One Credit Card."  (Id. at Ex. B, p.1.)

[3] The second amended complaint also brings Count II against Paul J. Klemm, Esq., Robert L. Baroska, Esq., and Nudelman, Klemm & Golub, P.C.  However, these defendants were voluntarily dismissed from this action by Plaintiff on June 7, 2012 pursuant to a settlement agreement. (Doc. No. 20.)  Plaintiff has not served these Defendants with the second amended complaint, and notes in his response that Count II should be asserted against all Capital One collection attorneys except for Paul J. Klemm, Robert L. Baroska, III and Nudelman, Klemm & Golub, P.C.  (Pl.'s Resp., Doc. No. 30-2, p. 23.)

IV").[4]  Further, Plaintiff seeks to bring his claim as a class action on behalf of "[a]ll persons who have been the subject of collection law suits [sic] brought by Defendants for which the Defendants attach as corroborative exhibits and/or as evidence written agreements . . ." which are inapplicable.  (Id. at ¶ 36.)

Capital One filed a motion to dismiss the second amended complaint on September 6, 2012.  The motion is now fully briefed and ready for disposition.

## II.  STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully."  Id.  To determine the sufficiency of a complaint under Twombly and Iqbal, the Court must take the following three steps: (1) the Court must "tak[e] note of the elements a plaintiff must plead to state a claim;" (2) the court should identify the allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth;" and (3) "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."  Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (citations omitted).

---

[4] Plaintiff has agreed to the dismissal of his breach of contract claim.  (Pl.'s Resp., p. 23.)  Accordingly, we will grant Defendant's motion on Count IV.

### III.   ANALYSIS

#### 1.   Count I - RICO Claims

In their motion, Capital One argues that Plaintiff's RICO claims, pursuant to 18 U.S.C. §§ 1962(c) and (d) are deficiently pled because Plaintiff does not assert facts that would establish that Plaintiff relied on the allegedly fraudulent representation, nor does he assert that he suffered any cognizable damages.  Capital One urges that Plaintiff's statement in the second amended complaint that he relied on Capital One's fraudulent representation—i.e. the 2010 Agreement—when he hired counsel to defend the collection action is undermined by the complaint and exhibits attached thereto.  Specifically, Capital One argues that Plaintiff hired an attorney to reduce his financial exposure, not as a result of the alleged fraud.  Thus, Capital One posits that Plaintiff did not rely on the 2010 Agreement, nor did he suffer any damages as a result of the alleged misrepresentation.

Section 1962(c) of the RICO statute provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[5] or collection of unlawful debt.

18 U.S.C. § 1962(c).  In order to state a claim under § 1962(c), the complaint must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985).

---

[5] "Racketeering activity" is defined by the statute to include "any act which is indictable under . . . [18 U.S.C.] section 1341 (relating to mail fraud), [and] section 1343 (relating to wire fraud) . . ." 18 U.S.C. § 1961.  The second amended complaint alleges that Capital One and their national attorney base communicated via the mails and wires "for the purpose of furthering the policy of imposing upon, attempting to collect and/or collecting the illegal charges from, the Plaintiff." (2d Am. Compl. ¶¶ 95-96, 98-99.)

Section 1962(d) of the RICO statute provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). "To state a RICO conspiracy claim under § 1962(d), 'a plaintiff must allege (1) agreement to commit the predicate acts of fraud, and (2) knowledge that those acts were a part of a pattern of racketeering activity conducted in such a way as to violate section 1962(a), (b) or (c).'" Grant v. Turner, 2012 WL 5928145, at *5 (3d Cir. Nov. 27, 2012) (quoting Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989)).

Standing to bring a private action under the RICO statute is extended to "[a]ny person injured in his business or property by reason of a violation of § 1962." 18 U.S.C. § 1964(c). The "by reason of" language in § 1964(c) has been interpreted as creating two distinct requirements for standing in RICO claims brought pursuant to § 1962: "(1) that the plaintiff suffered an injury to business or property; and (2) that the plaintiff's injury was proximately caused by the defendant's violation of 18 U.S.C. § 1962." Maio v. Aetna, Inc., 221 F.3d 472, 482-83 (3d Cir. 2000). To satisfy the injury requirement, a plaintiff must allege a "concrete financial loss." Id. at 483. Additionally, to meet the proximate cause requirement, the plaintiff must plead sufficient facts to plausibly assert that "the alleged violation led directly to the plaintiff's injuries." Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 461 (2006).

The United States Court of Appeals for the Third Circuit has not definitively ruled on whether a showing of reliance is necessary to establish proximate cause in a RICO claim based on mail or wire fraud. Walter v. Palisades Collection, LLC, 480 F. Supp. 2d 797, 806 (E.D. Pa. 2007). However, numerous cases from this district have held that reliance upon a material representation is required because "[i]t is a matter of basic logic that a misrepresentation cannot

5

cause, much less proximately cause, injury, unless someone relies upon it." Central Transp., LLC v. Atlas Towing, Inc., 884 F. Supp. 2d 207, 215-16 (E.D. Pa. 2012) (quoting Kimmel v. Phelan Hallinan & Schmieg, P.C., 847 F. Supp. 2d 753, 771 (E.D. Pa. 2012)) (quotation marks omitted); see also Walter, 480 F. Supp. 2d at 807. The United States Supreme Court has also noted that in most cases, a plaintiff will not be able to establish even but-for cause "without showing that someone relied on the defendant's misrepresentations." Bridge v. Phoenix Bond & Indemnity Co., 553 U.S. 639, 659 (2008) (emphasis in original).[6] We are persuaded by this line of reasoning, and find that some form of reliance on the defendant's misrepresentation is necessary to properly establish proximate cause for a RICO violation based on mail or wire fraud.

Although the second amended complaint lists a number of allegedly fraudulent communications that took place through the mails and the interstate wire system, the vast majority of listed communications are between Capital One and its attorneys in furtherance of the fraud, and are not misrepresentations directed at Plaintiff. (2d Am. Compl. ¶¶ 95-96.) The only material misrepresentation specifically directed at Plaintiff that is noted in the second amended complaint is the attachment of the 2010 Agreement to the amended complaint in the collection action. (Id. at ¶¶ 39, 58, 67, 95-96.) The second amended complaint states that

---

[6] While we note that Plaintiff's response cited to a number of cases holding that actual reliance is not required to state a claim for a mail or wire fraud RICO violation, these cases are all over a decade old, and many are from outside of this district. (See Pl.'s Resp., pp. 8-12.) Additionally, these cases do not state that reliance is not or cannot be a relevant consideration in determining whether or not a misrepresentation proximately caused an injury to a plaintiff. See, e.g., Prudential Ins. Co. of America v. U.S. Gypsum Co., 828 F. Supp. 287, 296 (D.N.J. 1993) (holding that "[s]pecific detrimental reliance is a sufficient but not necessary element of a RICO cause of action").

Plaintiff relied upon the false documentation and collection complaint in believing that "he was indebted to [Capital One] for the principal sum, the interest, attorney's fees and other charges sought," and as a result incurred damages by hiring an attorney.  (Id. at ¶¶ 113-14.)

Attorney's fees can constitute an out-of-pocket monetary loss that would sufficiently establish an injury in a RICO action.  Walter, 480 F. Supp. 2d at 804.  However, the attorney's fees injury must have been proximately caused by the defendant's misrepresentation.  Although Plaintiff states that he relied upon the false documentation in hiring an attorney, the complaint and exhibits thereto undermine this assertion.  Plaintiff does not dispute that his account with Capital One was delinquent.  Further, the second amended complaint states that he "sought the services of counsel to negotiate, reduce, or otherwise limit the financial exposure that Plaintiff believed was his obligation, resulting in the expenditure of attorney's fees and other costs to mitigate the exposure."[7]  (2d Am. Compl. ¶ 114.)  As reflected by the docket report attached to the second amended complaint, Plaintiff's attorney filed preliminary objections in the collection action, and thus had already been hired, on August 1, 2011.  (Id. at Ex. C.)  However, the amended complaint with the allegedly fraudulent 2010 Agreement was not filed until January 20, 2012.  (Id.)  Thus, it cannot be said that the use of the 2010 Agreement caused, much less proximately caused Plaintiff to incur attorney's fees.  According to his own statement within the second amended complaint, he would have hired an attorney to "negotiate, reduce and otherwise limit his financial exposure" whether the 2010 Agreement had been used or not.

To the extent that Plaintiff argues that reliance on charges and interest on his monthly statements establishes injuries proximately caused by Capital One's fraudulent use of the 2010

---

[7] Although the second amended complaint asserts that Plaintiff incurred "other costs" in mitigating the filing of the collection lawsuit, these damages are never described or listed.

Agreement, such argument is unavailing. The only statement in the second amended complaint that asserts such a theory is as follows: "Damages include, but are not limited to, charges imposed upon and actually and already paid by Plaintiffs(s) [sic] as provided and charged pursuant to the 2010 false Contract, which damages have yet to be calculated." (Id. at ¶ 115.) At no prior point in the second amended complaint, does Plaintiff assert that the 2010 Agreement, or any other improper agreement, was used with respect to Plaintiff's account prior to its attachment to the amended complaint in the collection proceeding. The racketeering activity on which Plaintiff's RICO claim is based is the utilization of false documentation in defaulted/delinquent accounts "for attachment to the filed complaints throughout the nation." (2d Am. Compl. ¶¶ 89-90) (emphasis added). Additionally, Plaintiff does not state that any payments were made to Capital One after the 2010 Agreement was presented in the collection action. Therefore, we find Plaintiff has not pled sufficient facts to plausibly support his argument that payments made pursuant to his monthly statements are an injury proximately caused by the use of the 2010 Agreement. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("naked assertion[s] devoid of further factual enhancement" will not suffice to establish a plausible claim for relief) (quotation marks omitted).

     Plaintiff has failed to sufficiently plead that he or anyone else relied upon the 2010 Agreement attached to the amended complaint in the collection action, and thus cannot establish that the misrepresentation proximately caused any injury. As the Court stated in Walter: "If Plaintiff[ ] paid the debt after falsely being told by Defendants that [he] was liable on it, Plaintiff[ ] would be able to demonstrate reliance." 480 F. Supp. 2d at 806. Although it is possible that the arbitrators in the collection action may rely upon the 2010 Agreement, and such reliance

might lead Plaintiff to suffer damages as a result, Plaintiff has failed to plead that the arbitration has even taken place. "RICO liability cannot attach to future contingent damages." Id. at 804. The financial injury must be concrete, not speculative. Maio v. Aetna, Inc., 221 F.3d 472, 483-84 (3d Cir. 2000).

Because Plaintiff has failed to plead sufficient facts to satisfy the standing requirements of § 1964, we will grant Capital One's motion with regard to Count I.[8]

### 2. Count III - UTPCPL Claims

With regard to Count III, violation of the UTPCPL, Capital One argues that Plaintiff has failed to state a claim because he has not demonstrated justifiable reliance or causation as required for standing under the statute.

The UTPCPL declares as unlawful "unfair methods of competition" and "unfair or deceptive acts or practices" in trade or commerce. 73 P.S. § 201-3. Actions that may constitute unfair methods of competition or deceptive acts or practices are listed under Section 201-2(4), and include a catch-all provision. "The statute creates a private right of action in persons upon whom unfair methods of competition and unfair or deceptive acts or practices are employed and who[,] as a result, sustain an ascertainable loss." Toy v. Metro. Life Ins. Co., 928 A.2d 186, 191, n. 4 (Pa. 2007) (citing 73 P.S. § 201-9.2). Due to the causation requirement in the standing provision, the UTPCPL has consistently been interpreted as requiring a private plaintiff to prove

---

[8] Because Plaintiff does not have standing to assert a RICO claim under § 1964(c), we must also dismiss Plaintiff's claim for conspiracy to violate RICO under § 1962(d). See Berk v. J.P. Morgan Chase Bank, N.A., 2011 WL 4467746, at *4-5 (E.D. Pa. Sept. 26, 2011) (finding that the plaintiff's claim under § 1962(d) should be dismissed for failure to allege an injury sufficient to establish standing under § 1964(c)). Further, a RICO conspiracy claim fails if the RICO claims on which the alleged conspiracy is based are deficient. Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1192 (3d Cir. 1993).

justifiable reliance and that the reliance caused an injury in order to establish standing. Hunt v. United States Tobacco Co., 538 F.3d 217, 221 (3d Cir. 2008); Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 439 (Pa. 2004).

As detailed above, we find that Plaintiff has not sufficiently pled that he, or anyone else, relied upon the 2010 Agreement, nor has he sufficiently pled that any injury was suffered as a result of the misrepresentation. Therefore, we will also grant Capital One's motion as to Count III.

## IV. CONCLUSION

Because the second amended complaint fails to assert facts that would plausibly establish an injury that was proximately caused by a misrepresentation by Capital One, Plaintiff's RICO claims will be dismissed. Further, because Plaintiff has not established that he justifiably relied upon the alleged misrepresentation, leading to an injury, Plaintiff's UTPCPL claims shall also be dismissed. Finally, because Plaintiff has agreed to withdraw his claim for breach of contract, we will dismiss this claim as well.

We find, however, that Plaintiff could potentially state a claim if he relied upon Capital One billing statements that calculated payments pursuant to an inapplicable Cardmember Agreement, and if such reliance proximately caused a financial injury to Plaintiff. Accordingly, we will grant leave to amend.

Our Order follows.[9]

---

[9] While Plaintiff correctly states in his response that Capital One does not argue that the claims for violation of the FDCPA found in Count II should be dismissed, Capital One is not named as a Defendant in Count II. The only remaining Defendants named in Count II are "All Collection Attorneys for Capital One Bank (USA), N.A." We note that none of these collection attorneys have been properly named or served, and will address this issue in the attached Order.